[Cite as *Bessenbacher v. Clark*, 2026-Ohio-1900.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

| | | |
|---|---|---|
| TERRY BESSENBACHER, et al., | : | |
| Appellants, | : | CASE NO. CA2025-05-043 |
| vs. | : | OPINION AND JUDGMENT ENTRY 5/26/2026 |
| JOEY CLARK, et al., | : | |
| Appellees. | : | |
| | : | |

CIVIL APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
Case No. CV 2023 11 2303

Patrick G. Moeller, for appellee.

Fred Miller, for appellant.

## **O P I N I O N**

**BYRNE, J.**

{¶ 1} Plaintiffs-appellants, Terry and Gina Bessenbacher, appeal from the decision of the Butler County Court of Common Pleas, General Division, which denied their summary judgment motion and instead granted summary judgment in favor of

defendants-appellees, Joey Clark, Kevin Clark, and C&J Roofing Company, Inc. ("Defendants"). Based on the foregoing analysis, we affirm the common pleas court's decision in part and reverse in part.

## I. Factual and Procedural Background

{¶ 2}   In March 2024, the Bessenbachers filed an amended complaint against Joey Clark, Kevin Clark, C&J Roofing Company, Inc., and Enerbank USA.[1] The complaint stated claims for forgery, fraud, breach of contract, a violation of the Ohio Consumer Sales Practices Act, dishonest acts by a lender, civil conspiracy, and a violation of Ohio's Home Solicitation Sales Act. This appeal only concerns the breach of contract claim.

{¶ 3}   The complaint arose out of contracts entered into between C&J Roofing Company, Inc. ("Roofing") and Terry Bessenbacher. Kevin Clark is President of Roofing. Joey Clark is Kevin Clark 's son, and during the relevant events, was a Roofing employee.

{¶ 4}   The parties were all familiar with each other before entering into the contracts. Terry Bessenbacher operates an automotive repair business. He had previously repaired Roofing's vehicles. Terry's daughter was or is married to Joey Clark. And Kevin Clark lives down the street from Terry Bessenbacher, in Hamilton, Ohio.

{¶ 5}   In or around April 2022, Terry Bessenbacher approached Joey Clark, stating he wanted Roofing to install a new roof on his residence and new siding on his residence and detached garage. A Roofing estimator came out, took measurements, and prepared a bid. In June 2022, Terry Bessenbacher and Roofing entered into three separate written contracts: (1) a contract for a new roof on the residence, (2) a contract for new vinyl siding on the residence, and (3) a contract for new siding and soffits on the detached garage.

---

1. The Bessenbachers' claims against Enerbank USA were ordered to be resolved through binding arbitration and are not at issue in this appeal. Enerbank USA did not participate in this appeal.

{¶ 6} The work on the residence and detached garage commenced in June and continued through the summer months of 2022. Roofing hired a subcontractor to perform the roof replacement. Roofing's employees performed the siding work.

{¶ 7} In the fall of 2022, Roofing, Kevin Clark, and Joey Clark learned that Terry Bessenbacher was not satisfied with the work. Terry Bessenbacher claimed that he told Kevin Clark, personally, that he found a stain in his residence which was the result of the new roof leaking. He also complained about many "holes" in the garage, allegedly the result of the siding work being done improperly. The following averment in the complaint describes the Bessenbachers' general allegations of breach of contract, and also refers to an electrical issue:

> The Defendants Joey Clark, Kevin Clark and C&J Roofing breached the contract to re-roof Plaintiff's house. . . . These Defendants installed a shoddy roof that was un-workmen like and during the re-roofing one crew walked off the job due to a dispute with the roofing company. The Defendant's workmen damaged the house by disrupting the electrical lines in the house, knocking holes in walls.

{¶ 8} The matter proceeded to discovery and the parties took the depositions of Terry Bessenbacher, Joey Clark, and Kevin Clark. The Bessenbachers subsequently moved for partial summary judgment. With relevance to this appeal, the Bessenbachers requested summary judgment on their breach of contract claim, which alleged that Roofing's workers walked off the job, failed to complete the contracted work, and damaged the premises. In support, the Bessenbachers attached their affidavits, which identified various exhibits, including photographs of the residence and detached garage, purportedly demonstrating the "shoddy" or incomplete work performed by Roofing or its subcontractor, and alleged damage to an electrical line.

{¶ 9} Among the exhibits offered by the Bessenbachers was an estimate for siding work and two invoices from an electrical contractor. The Bessenbachers offered

these documents as evidence that the work performed by Roofing was deficient, and to support their damage claim.

{¶ 10} The siding estimate, from "Mr. Roof," was dated June 4, 2024, approximately two years after Roofing installed the new siding. The estimate proposed to remove "old" siding on the garage and remove wall paneling. It further proposed to install Tyvek house wrap and install new siding. Finally, it proposed to fix sagging and "out of place" siding panels on the "house." The total cost proposed was $8,146.

{¶ 11} The two invoices were from Innovative Electric and appear to describe work that was performed over two days in November 2022. The earlier-dated invoice details a project titled "Garage Circuit" and describes work consisting of installing a new electrical supply to the garage. The later-dated invoice describes a project titled "Garage Feeder." The invoice describes pulling wire through a conduit on the house and in the garage and terminating wires at a weatherhead. The invoice describes finding that an old breaker box in the garage had been damaged and installing a subpanel in its place. The total costs for the first and second invoice were $5,305.60.

{¶ 12} Joey Clark, Kevin Clark, and Roofing also moved for summary judgment and asked the court to grant them judgment on all of the Bessenbachers' claims. In support, the defendants filed the three depositions taken in the case as well as the affidavits of Joey Clark and Kevin Clark.

{¶ 13} With regard to the Bessebachers' breach of contract claim, Defendants asserted that photographs attached to Joey Clark's affidavits showed that the roofing and siding work had been completed at the house. As to the electrical work, the Defendants referred to Joey Clark's and Kevin Clark's affidavits, in which they claimed that all electrical work at the home was performed by the city of Hamilton. Finally, Defendants asserted that the Bessenbachers had failed to file any expert report stating that the work

performed by Roofing was of poor quality, and that the Bessenbachers had instead only provided "estimates."

{¶ 14} During the proceedings, both parties filed additional affidavits, responding to factual allegations made by the opposing side. The Bessenbachers also filed the affidavit of the City of Hamilton's chief electrician, who essentially denied that the city performed any work at the Bessenbachers' residence, and stated that the Bessenbachers had to hire an electrician to reconnect their electric service.

{¶ 15} In April 2025, the common pleas court issued a decision denying the Bessenbachers' motion for partial summary judgment, granting the Defendants' motion for summary judgment on all claims, and dismissing the Bessenbachers' complaint in full.

{¶ 16} With respect to the breach of contract claim, the court noted that the Bessenbachers claimed that the Defendants breached the contract by performing in an unworkmanlike manner, specifically by disrupting electrical lines and by "knocking holes" in the wall. The court observed that the Defendants claimed, through their affidavits, that they had performed in a workmanlike manner and denied that they damaged the Bessenbachers' home and detached garage.

{¶ 17} In analyzing the issue, the court cited case law supportive of the contention that construction defects are generally outside of the expertise of lay persons. The court found that the Bessenbachers had failed to present any expert report or any other evidence that the Defendants performed in an unworkmanlike manner, other than their own affidavits. The court noted that the Bessenbachers had filed the Mr. Roof estimate, but found that this estimate, dated two years after the Defendants' work, did not provide any statements or opinions regarding the Defendants' work. Likewise, the court found that the two invoices from Innovative Electric also did not contain any statements or opinions regarding the Defendants' work or why the Defendants' work would have necessitated

the repairs listed on the invoice. The court found that the Bessenbachers could not satisfy their burden without presenting some evidence that the Defendants' work was defective, and the estimates and invoices did not contain such evidence. The court acknowledged that the Bessenbachers had presented photographs of nail holes, but noted that the affidavit of Joey Clark averred that nail holes are common on siding projects.

{¶ 18} Ultimately, the court found that the Defendants met their burden of proving that they performed under the contract and had not damaged the Bessenbachers' property, while the Bessenbachers had not presented any evidence to rebut this conclusion. Accordingly, the court granted summary judgment in favor of the Defendants on the Bessenbachers' breach of contract claim.

{¶ 19} The Bessenbachers appealed, raising one assignment of error.

## II. Law and Analysis – Breach of Contract

{¶ 20} The Bessenbachers' sole assignment of error states:

> THE TRIAL COURT ERRED TO THE PREJUDICE OF PLAINTIFFS-APPELLANTS WHEN IT GRANTED APPELLEES' MOTION FOR SUMMARY JUDGMENT.

{¶ 21} The Bessenbachers argue that the summary judgment record contains evidence demonstrating a genuine issue of fact for trial on the breach of contract claim.

### A. Summary Judgment Standard

{¶ 22} "Summary judgment is a procedural device used to terminate litigation when there are no issues in a case requiring a formal trial." *Franchas Holdings, L.L.C. v. Dameron*, 2016-Ohio-878, ¶ 16 (12th Dist.), citing *Roberts v. RMB Ents., Inc.*, 197 Ohio App.3d 435, 2011-Ohio-6223, ¶ 6 (12th Dist.).

{¶ 23} "Civ.R. 56 sets forth the summary judgment standard." *State ex rel. Becker v. Faris*, 2021-Ohio-1127, ¶ 14 (12th Dist.). "Pursuant to that rule, a court may grant summary judgment only when (1) there is no genuine issue of any material fact, (2) the

moving party is entitled to judgment as a matter of law, and (3) the evidence submitted can only lead reasonable minds to a conclusion that is adverse to the nonmoving party." *Spitzer v. Frisch's Restaurants, Inc.*, 2021-Ohio-1913, ¶ 6 (12th Dist.), citing *BAC Home Loans Servicing, L.P. v. Kolenich*, 2011-Ohio-3345, ¶ 17 (12th Dist.). "'An issue is genuine only if the evidence is such that a reasonable jury could find for the non-moving party.'" *Baker v. Bunker Hill Haven Home*, 2024-Ohio-875, ¶ 10 (12th Dist.), quoting *Abbuhl v. Orange Village*, 2003-Ohio-4662, ¶ 14 (8th Dist.). "A material fact is one which would affect the outcome of the suit under the applicable substantive law." *Hillstreet Fund III, L.P. v. Bloom*, 2010-Ohio-2961, ¶ 9 (12th Dist.), citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

{¶ 24} "The moving party bears the initial burden of informing the court of the basis for the motion and demonstrating the absence of a genuine issue of material fact." *Berkheimer v. REKM, L.L.C.*, 2023-Ohio-116, ¶ 18 (12th Dist.), citing *Dresher v. Burt*, 75 Ohio St.3d 280, 292 (1996). To satisfy this initial burden, "[t]he moving party 'must be able to point to evidentiary materials of the type listed in Civ.R. 56(C) that a court is to consider in rendering summary judgment.'" *Adkins v. Middletown*, 2025-Ohio-317, ¶ 60 (12th Dist.), quoting *Kelley v. Dayton Pub. Schools Bd. of Edn.*, 2024-Ohio-979, ¶ 21 (2d Dist.). "Once this burden is met, the nonmoving party has a reciprocal burden to set forth specific facts showing there is some genuine issue of material fact yet remaining for the [trier of fact] to resolve." *Robinson v. Cameron*, 2015-Ohio-1486, ¶ 9 (12th Dist.), citing *Dresher* at 293. The nonmoving party does this by presenting "'specific facts,'" demonstrating the existence of a genuine triable issue; the nonmoving party "'may not rest on the mere allegations or denials in its pleadings.'" *Oliphant v. AWP, Inc.*, 2020-Ohio-229, ¶ 31 (12th Dist.), quoting *Deutsche Bank Natl. Trust Co. v. Sexton*, 2010-Ohio-4802, ¶ 7 (12th Dist.), citing Civ.R. 56(E). "Summary judgment is proper if the nonmoving party fails to set forth

such facts." *Taylor v. Atrium*, 2019-Ohio-447, ¶ 10 (12th Dist.), citing *Puhl v. U.S. Bank, N.A.*, 2015-Ohio-2083, ¶ 13 (12th Dist.). "In determining whether a genuine issue of material fact exists, the evidence must be construed in favor of the nonmoving party." *Assured Admin., L.L.C. v. Young*, 2019-Ohio-3953, ¶ 14 (12th Dist.), citing *Vanderbilt v. Pier 27, L.L.C.*, 2013-Ohio-5205, ¶ 8 (12th Dist.).

{¶ 25} "This court reviews a trial court's summary judgment decision under a de novo standard." *Faith Lawley, L.L.C. v. McKay*, 2021-Ohio-2156, ¶ 26 (12th Dist.), citing *Deutsche* at ¶ 7. "'[D]e novo review means that this court uses the same standard that the trial court should have used . . .'" *Brock v. Servpro*, 2022-Ohio-158, ¶ 29 (12th Dist.), quoting *Nationwide Agribusiness Ins. Co. v. Heidler*, 2019-Ohio-4311, ¶ 71 (12th Dist.). Therefore, when conducting a de novo review, this court independently reviews the trial court's decision without giving it any deference. *Baker* at ¶ 9. "When an error is found in a trial court's decision granting a summary judgment motion, the trial court's decision is generally reversed and the matter is remanded to the trial court for further proceedings." *Guzzetta v. Guzzetta*, 2024-Ohio-294, ¶ 17 (12th Dist.).

**B. Breach of Contract – Applicable Law**

{¶ 26} "To establish a claim for breach of contract, a plaintiff must prove (1) the existence of a contract, (2) plaintiff fulfilled his or her contractual obligations, (3) defendant failed to fulfill his or her contractual obligations, and (4) due to this failure plaintiff incurred damages." *W. Environmental Corp. of Ohio v. Hardy Diagnostics*, 2024-Ohio-3051, ¶ 26 (12th Dist.).

{¶ 27} The duty to perform in a workmanlike manner is imposed as an implied contractual obligation on contractors who furnish construction services on existing structures. *Barton v. Ellis*, 34 Ohio App.3d 251, 252-253 (10th Dist.1986). *See McCray v. Clinton Cty. Home Improvement*, 125 Ohio App.3d 521, 523-524 (12th Dist.1998).

## 1. Existence of a Contract

{¶ 28} The Bessenbachers' amended complaint asserted breach of contract claims against Joey Clark and Kevin Clark, individually, and Roofing, asserting that all three defendants "breached the contract to re-roof Plaintiff's [sic] house."

{¶ 29} But the only contracts produced in summary judgment proceedings are between Roofing and Terry Bessenbacher—not between Terry Bessenbecher and either Kevin Clark or Joey Clark. Kevin Clark signed the contracts, but he expressly did so on behalf of Roofing, in his capacity as President of Roofing. Joey Clark did not sign the contracts and his name does not appear anywhere in the contracts.

{¶ 30} As such, the Bessenbachers have not established the existence of any contract between Terry Bessenbacher and either Kevin Clark or Joey Clark, individually. There being no genuine issue of fact as to the existence of any contract between the Bessenbachers and Kevin Clark or Joey Clark, we find that the trial court did not err to the extent it granted summary judgment in favor of Kevin Clark and Joey Clark on the Bessenbachers' breach of contract claim.

{¶ 31} Neither party raised the issue of whether the Bessenbachers established the existence of a contract between them and Kevin Clark or Joey Clark, and the issue was not addressed by the trial court. But even though the trial court did not address this issue and instead found for Kevin Clark and Joey Clark on other grounds, we may affirm the trial court on this alternative basis in a de novo review. *Pollock v. Brigano*, 130 Ohio App.3d 505, 510, fn. 3 (12th Dist.1998) ("an appellate court can affirm a trial court's decision to grant summary judgment based upon different legal reasoning").

## 2. Breach of Contract by Roofing

{¶ 32} The Bessenbachers did prove the existence of a contract between Terry Bessenbacher and Roofing, and the remainder of this opinion will address whether the

Bessenbachers demonstrated genuine issues of fact for trial as to whether Roofing breached that contract.[2]

{¶ 33} The Bessenbachers assert that their affidavits, along with photographs submitted and identified through those affidavits, demonstrate "incomplete" and "shoddy" work performed on the residence and damage to the interior of their detached garage, all allegedly caused by Roofing's workers. The Bessenbachers also point to Terry's deposition testimony that "some of the siding was coming loose" and to the estimate from Mr. Roof as proof that the siding job was performed deficiently. The Bessenbachers further point to Terry's affidavit, in which he stated that the roof installed by Roofing leaked and caused a stain.

{¶ 34} The Bessenbachers concede that the Defendants' affidavits—asserting that Roofing's workers performed in a workmanlike manner and did not damage the home or garage—disputed these allegations. But the Bessenbachers argue that this only demonstrates that the record contains genuine issues of fact that should be decided by a factfinder at trial.

{¶ 35} Before we discuss this issue, we first turn to the crux of the trial court's decision in awarding summary judgment in favor of the Defendants. The court found dispositive the fact that the Bessenbachers had not submitted any expert report opining that Roofing's work was unworkmanlike. The court noted well-settled law that construction defects are generally outside the expertise of laypersons. *Holbrook v. Kingsgate Condo Assn.*, 2010-Ohio-850, ¶ 20 (12th Dist.) The court found that the Bessenbachers had not presented any evidence of defective work outside of their claims that the work was

---

2. Questions remain as to whether Gina Bessenbacher is a party to the contract between Terry Bessenbacher and Roofing. The contracts only refer to Terry Bessenbacher. However, the parties do not raise this issue on appeal and it is not necessary for us to decide in the context of this opinion.

defective. Furthermore, the court found that neither of the three invoices/estimates provided any statements or opinions regarding anything that Roofing did that required the work quoted.

{¶ 36} It is true that "construction defects do not *generally* fall within the expertise of laypersons." (Emphasis added.) *Holbrook* at ¶ 20. And Evid.R. 702(A) allows the use of expert testimony where the testimony "relates to matters beyond the knowledge or experience possessed by lay persons." But expert evidence is not required in *all* cases alleging unworkmanlike performance by a contractor. With regard to a claimed breach of professional duty, the Ohio Supreme Court has held that if the matter to be determined is one of common knowledge, expert opinion evidence is neither required nor necessary. *Jones v. Hawkes Hosp. of Mount Carmel*, 175 Ohio St. 503 (1964), paragraph one of the syllabus.

{¶ 37} In *Sparks v. Martin*, 1995 Ohio App. LEXIS 850 (6th Dist. Mar. 3, 1995), homeowners contracted with a roofer to repair and reshingle a home. *Id*. at *1-2. After the work was completed, the homeowners were dissatisfied with the work because the roofer used shingles of two distinctly different colors and a flat area of the roof leaked. *Id*. at *2. The homeowners thereafter filed a small claims complaint and, after a hearing, were awarded damages of $1,200 against the roofer. *Id*.

{¶ 38} On appeal, the roofer argued that the trial court should have required the homeowners to establish by expert testimony that the roofer breached his duty to perform in a workmanlike manner. *Id*. at *3. The appeals court noted that the evidence before it consisted of the original documents, photographs, and other exhibits. *Id*. Citing Evid.R. 702 and *Jones*, and upon consideration of the evidence presented at trial, the appeals court found that the trial court was not required to have expert testimony before it in order to find that the roofer failed to act in a workmanlike manner in repairing the roof. *Id*. at *3-

4. In other words, the appeals court concluded that an expert witness was not necessary in order for a factfinder to conclude that mismatched shingles and a leaky roof demonstrated unworkmanlike services.

{¶ 39} Similarly, in *Jurgens Real Estate Co. v. R.E.D. Constr. Corp.*, 103 Ohio App.3d 292 (12th Dist.1995), this court found expert testimony unnecessary for the jury to determine the "cause, the fault, and the effect" of delays in a construction project. In *Jurgens*, the trial court allowed two expert witnesses to discuss how delays in the construction process had contributed to increased costs. *Id*. at 297-298. We noted that this "was not a matter which was highly technical, scientific in nature, or beyond the experience or knowledge of the average jury." *Id.* at 298. And we found that the expert testimony gave undue and unwarranted weight to the testimony of certain lay witnesses who also testified on the issue of delay.

{¶ 40} Here, the Bessenbachers' essential arguments, through their affidavits, were that Roofing installed a roof that leaked and that the siding project resulted in nail holes in their home and that siding was coming loose and falling off. They further claim that Roofing's workers improperly disconnected electrical service, which had to be professionally reattached by an electrician. If true, at least some of these allegations would substantiate the Bessenbachers' claim that the work performed by Roofing was unworkmanlike, and expert testimony was unnecessary because these are not "highly technical" issues. That is, a layperson could find that a leaky roof, loose siding, and damage to an electrical line, if proven to have been caused by Roofing's workers, could constitute unworkmanlike services. The trial court was therefore incorrect in finding that the Bessenbachers were necessarily required to provide an expert witness to prove that the work performed by Defendants was unworkmanlike.

{¶ 41} Having found that the failure to file an expert report was not dispositive of the issues raised in summary judgment, we turn to the summary judgment record. This record consists of the Bessenbachers' affidavits, in which they claim that Roofing performed in an unworkmanlike manner, resulting in a roof leak, holes in walls, loose siding, and damage to the electric system. The Bessenbachers corroborated these claims, to some degree, with estimates and invoices from two contractors detailing repairs allegedly related to Roofing's work. While neither the Mr. Roof estimate nor the electrical invoices stated what Roofing may have done that necessitated the repairs, there is at least an implication that Roofing's work may have contributed to the need for repairs. The Mr. Roof estimate in particular noted loose siding. In construing this evidence, we must examine it in a light most favorable to the Bessenbachers. *Assured*, 2019-Ohio-3953, at ¶ 14 (12th Dist.). At the very least, the Bessenbachers' summary judgment evidence indicates that issues of fact remain as to causation—that is, whether Roofing's work caused the Bessenbacher's alleged damages.

{¶ 42} The Bessenbachers also claim that the photographs they attached to their motion for partial summary judgment motion demonstrate unworkmanlike performance. However, we have reviewed the attachments to the motion and find that nearly every photograph is in black and white and has been rendered unintelligible. It is not clear why the photographs are unintelligible, but it appears to be the result of the manner in which the documents were scanned and e-filed with the county clerk. We were not able to locate these photographs in color or in any discernible representation elsewhere in the record. In sum, we are unable to discern anything from the Bessenbachers' photographs.

{¶ 43} Roofing supported its own summary judgment motion with depositions and multiple affidavits. However, those affidavits merely contradicted the claims of unworkmanlike performance. For example, Paragraph Five of Joey Clark's affidavit simply

states that, "Roofing did not install a shoddy unworkmanlike roof or siding job at the . . . property . . . There was no damage to the house or electrical line as a result of [Roofing's] work." The photographs submitted by Roofing, and authenticated through Joey Clark's affidavit, also do not demonstrate the absence of defective work. That the roof and siding appear complete and intact in these photographs does not demonstrate that the roof did not leak, or that the siding was installed properly. In whole, the parties' competing affidavits and summary judgment evidence shed little if any light on whether the work performed by Roofing was workmanlike or unworkmanlike.

{¶ 44} The summary judgment record supported neither parties' motions requesting summary judgment on the breach of contract claim. The record in this case was underdeveloped on exactly what occurred at the Bessenbachers' property in terms of Roofing's actual work on the property. For reasons that are unclear, the depositions in this case were almost entirely directed towards the Bessenbachers' claims against Enerbank. The three witnesses only briefly discussed the issues with Roofing's work. The fact that the record was so underdeveloped on these issues is evidenced by the fact that both sides filed multiple, supplementary affidavits in support of summary judgment.

### III. Conclusion

{¶ 45} On this record, genuine issues of fact remain for trial on whether Roofing breached the contracts by performing in an unworkmanlike manner with respect to both the roofing and siding jobs and with respect to the alleged damage to the electrical system. As such, we sustain the Bessenbachers' sole assignment of error (only with respect to Roofing, as described above) and remand this case for further proceedings. We otherwise affirm the trial court's award of summary judgment to the Defendants.

{¶ 46} Judgment affirmed in part, reversed in part, and remanded.

HENDRICKSON, P.J., and SIEBERT, J., concur.

## J U D G M E N T   E N T R Y

The assignment of error properly before this court having been ruled upon, it is the order of this court that the judgment or final order appealed from be, and the same hereby is, reversed as to the grant of summary judgment in favor of C&J Roofing Company, Inc. on the Bessenbachers' breach of contract claim and remanded for further proceedings consistent with the above Opinion. The trial court's decision as to all other claims and parties is affirmed.

It is further ordered that a mandate be sent to the Butler County Court of Common Pleas for execution upon this judgment and that a certified copy of this Opinion and Judgment Entry shall constitute the mandate pursuant to App.R. 27.

Costs to be taxed 50% to appellant and 50% to appellee.

*/s/ Robert A. Hendrickson, Presiding Judge*

*/s/ Matthew R. Byrne, Judge*

*/s/ Melena S. Siebert, Judge*